# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

KATHLEEN R. BOROS,

        Plaintiff,

v.                            Case No:  2:17-cv-189-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff Kathleen Boros seeks judicial review of the denial of her claims for disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").  The Court has reviewed the record, the Joint Memorandum (Doc. 15) and the applicable law.  For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.[1]

### I.    Issues on Appeal[2]

Plaintiff raises three issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") decision to give little weight to the opinions of Plaintiff's treating psychiatrist, Omar Rieche, M.D., treating physician,

---

[1] Both parties have consented to the jurisdiction of the United States Magistrate Judge.  Doc. 11.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Richard Torricelli, M.D., PA, and psychotherapist, MaryAnn Rocco, LCSW; (2) whether substantial evidence supports the ALJ's assessment of Plaintiff's credibility; and (3) whether the ALJ developed a fair and full record when she declined to allow Plaintiff to submit an additional treatment note after the hearing.

## II.   Summary of the ALJ's Decision

On May 13, 2013, Plaintiff filed her application for a period of disability and DIB, alleging her disability began January 31, 2013[3] due to bipolar, post-traumatic stress disorder ("PTSD") and anxiety.   Tr. 203-06, 222-23.   Plaintiff's claims were denied initially on July 19, 2013, and upon reconsideration on September 6, 2013. Tr. 114-19, 123-27.   On September 23, 2013, Plaintiff requested a hearing before an ALJ.   Tr. 128-29.   ALJ Roxanne Fuller held a hearing on September 10, 2015, and on September 22, 2015, the ALJ found Plaintiff was not disabled from January 31, 2013 through the date of the decision.   Tr. 12-25, 33-58.

At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018 and had not engaged in substantial gainful activity since the alleged onset date of January 31, 2013.   Tr. 14.   Next, at step two, the ALJ found Plaintiff had severe impairments of bipolar, anxiety and PTSD.   Tr. 14-15.   At step three, the ALJ concluded Plaintiff "does not have an

---

[3] Plaintiff previously filed a separate application for a period of disability and DIB on October 7, 2010, and the record contains the opinion by ALJ James Myles dated January 30, 2013, finding Plaintiff was disabled from April 2, 2010 through December 10, 2012.   Tr. 70-87.   ALJ Myles found that on December 11, 2012, "medical improvement occurred that is related to the ability to work, and [Plaintiff] has been able to perform substantial gainful activity from that date through the date of this decision."   Tr. 71.   Plaintiff subsequently filed the May 13, 2013 application at issue here, alleging a disability onset date of January 31, 2013.   Tr. 203-206, 222-23.

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 15 (internal citations omitted). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels" with several "non[-]exertional" limitations:

> [N]ever climb ladders, ropes, or scaffolds; occasional exposure to moving mechanical parts; occasional exposure to unprotected heights; exposure to moving mechanical parts; occasional exposure to unprotected heights; occasional operating a motor vehicle; able to perform simple, repetitive, routine tasks; no interaction with the public; and occasional interaction with coworkers and supervisors.

Tr. 16.

At step four, the ALJ determined Plaintiff was unable to perform any past relevant work. Tr. 23. Finally, at step five, the ALJ determined there were a significant number of jobs in the national economy Plaintiff could perform. Tr. 24. Thus, the ALJ concluded Plaintiff was not disabled from January 31, 2013 through September 22, 2015, the date of the decision. Tr. 25. On February 6, 2017, the Appeals Council denied Plaintiff's request for review, and Plaintiff subsequently filed a Complaint with this Court. Tr. 1-3; Doc. 1. The ALJ's September 22, 2015 decision is the final decision of the Commissioner, and the matter is now ripe for review.

## III.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th

Cir. 2011). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[4] Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

---

[4] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527 (effective March 27, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

## IV. Discussion

### a. *Weighing medical source opinions*

In evaluating the medical opinions of record, including those of treating medical providers, examining medical providers and non-examining state agency medical consultants, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. § 404.1527(e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); *Winschel*, 631 F.3d at 1178-79.

When determining how much weight to afford a medical opinion, the ALJ considers whether there is an examining or treating relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . ." 20 C.F.R. §

404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Further, the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1)-(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

Here, Plaintiff argues the ALJ improperly weighed the opinions of three medical sources: internist Dr. Torricelli, Plaintiff's treating primary care physician; psychiatrist Dr. Rieche, Plaintiff's treating psychiatrist; and Ms. Rocco, Plaintiff's psychotherapist. Doc. 15 at 7-12; *see* Tr. 605-09, 624-29, 631-41, 667-726, 727-28, 767-69, 772-849, 852-99, 901-32, 1042-49. Because the ALJ explained her reasons for assigning the weight she did to each medical source in the context of significant objective medical evidence in the record, the Court finds substantial evidence supports the ALJ's decision to assign little weight to the opinions.

### i. *Dr. Torricelli*

Dr. Torricelli was Plaintiff's primary care physician since at least 2012 and treated Plaintiff periodically over several years. *See* Tr. 624-29, 631-41, 852-85, 895-901. Dr. Torricelli also referred Plaintiff to specialists on occasion. *See* Tr. 611, 771. He submitted an opinion letter on December 21, 2012, stating Plaintiff

was "nonfunctional primarily due to a mental disorder" and was prescribed multiple medications. Tr. 883. Specifically, Dr. Torricelli stated he "believe[s] she is nonfunctional in her capacity as a special education teacher." *Id.* He also stated there was "no way" Plaintiff would be able to work due to her "bipolar delusions[] and severe problems dealing with stress." *Id.* The ALJ discounted Dr. Torricelli's opinion partly because he submitted it prior to Plaintiff's alleged onset date. Tr. 22. The ALJ also noted his opinion was inconsistent with the medical evidence. Tr. 22-23. She cited examples of medical evidence in the record, including Dr. Torricelli's own notes, indicating Plaintiff's mental status examinations were normal. Tr. 19, 22-23 (citing, *e.g.*, Tr. 973). Notably, Dr. Torricelli's statement that Plaintiff was unable to function in her capacity as a special education teacher was consistent with the ALJ's finding that Plaintiff was unable to perform past relevant work. *See* Tr. 23, 883. Dr. Torricelli also states, however, that Plaintiff is "nonfunctional" and there is "no way" she could work, without specifying whether he is referring to her employment as a special education teacher or any type of work. *See* Tr. 883. If he meant his December 12, 2012 opinion letter to apply only to Plaintiff's ability to function as a special education teacher, then Dr. Torricelli did not give an opinion as to Plaintiff's ability to function generally. *See* Tr. 883.

Plaintiff argues the ALJ improperly weighed Dr. Torricelli's opinion and notes that his opinion is consistent with Dr. Rieche's and Ms. Rocco's opinions. Doc. 15 at 10-11. Plaintiff also asserts the ALJ's emphasis on the date of Dr. Torricelli's opinion was misplaced, as he submitted the opinion only about one month prior to the

alleged onset date, and there is "no evidence to suggest" Plaintiff's condition changed in the intervening month. *Id.* at 11. Finally, Plaintiff argues the regulations indicate "evidence up to twelve months prior to the alleged onset date is relevant to the determination of disability." *Id.* (citing 20 C.F.R. § 404.1512(d)). The Commissioner responds the ALJ properly weighed Dr. Torricelli's opinion because the opinion pre-dates Plaintiff's alleged onset date and is inconsistent with the medical evidence, including Dr. Torricelli's treatment notes. *Id.* at 17. The Commissioner cites examples in the record including notes that Plaintiff had "normal mental status examinations, including good judgment; normal mood and affect; [was] oriented to time, place, and person; and [had] normal recent and remote memory[.]" *Id.* (citing Tr. 862, 899). The Court finds substantial evidence supports the ALJ's decision to give Dr. Torricelli's opinion little weight.

Dr. Torricelli's treatment notes indicate Plaintiff's impairments were ongoing but generally stable. For example, Dr. Torricelli's treatment note from June 18, 2012 states her bi-polar disorder was "stable" and responding to medication, and her depression was "chronic [and] stable[.]" Tr. 627. On August 24, 2012, he again noted Plaintiff's depression was present but "stable" and her anxiety was "stable on current treatment" with "[n]o recent exacerbations[.]" Tr. 634, 636. A treatment note from December 21, 2012, the date Dr. Torricelli submitted his disability opinion, indicates Plaintiff had generalized anxiety disorder and depressive disorder. Tr. 856. He further noted Plaintiff reported that her depression made her tired and caused "general malaise" and "decreased energy" and was of moderate severity. Tr.

858. Dr. Torricelli also noted, however, that Plaintiff had "no depression, sleep disturbances, or alcohol abuse[,]" and showed "good judgement[,]" "normal mood and affect[,]" was "active and alert[,]" oriented to time and place, and had normal recent and remote memory. Tr. 859, 862.

Although the ALJ was required to consider Dr. Torricelli's treatment records, she was not required to defer to his opinion on Plaintiff's disability, as that issue is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1)-(2); SSR 96-5p, 1996 WL 374183 (July 2, 1996), at *2. The ALJ considered Dr. Torricelli's records and gave specific reasons for discounting his opinion, including that the opinion was issued prior to Plaintiff's alleged onset date and was inconsistent with the medical evidence. Tr. 22. As explained above, Dr. Torricelli's records consistently indicated that Plaintiff's disorders were "stable" and responding well to medication. *See* Tr. 624-29, 631-41, 852-82, 895, 901; *Crawford*, 363 F.3d at 1159-60 (ALJ may discount a medical opinion when contradicted by the service provider's own treatment notes). Dr. Torricelli's treatment notes also indicate that Plaintiff had depression and anxiety and that her impairments were ongoing and required treatment. *See* Tr. 624-29, 631-41, 852-82, 895, 901. The Court, however, will not re-assess conflicting treatment notes because "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson v. Perales*, 402 U.S. 389, 389-403 (1971)). Here, the ALJ determined Dr. Torricelli's treatment

notes and the record as a whole were inconsistent with Dr. Torricelli's opinion, and substantial evidence in Dr. Torricelli's notes and the medical evidence supports that determination. *See* Tr. 22. Further, although part of Dr. Torricelli's opinion is consistent with the ALJ's finding that Plaintiff was unable to perform past relevant work, it is unclear whether the rest of his opinion is referring specifically to her ability to function as a special education teacher or her ability to function generally. If the former, then Dr. Torricelli did not offer an opinion as to Plaintiff's ability to function generally. *See* Tr. 23, 883. Therefore, given the reasons articulated by the ALJ and the Court's review of the medical evidence in the record, the Court finds substantial evidence supports the ALJ's decision to afford Dr. Torricelli's opinion little weight.

ii. *Dr. Rieche*

Dr. Rieche is a psychiatrist who treated Plaintiff and regularly examined her from 2011 through at least September 2015. *See* Tr. 605-09, 667-726, 767-69, 772-849, 886-94, 902-27, 928-32, 1042-49. Dr. Rieche submitted a mental RFC assessment questionnaire on April 4, 2012, stating Plaintiff had either marked or extreme limitations in all areas of occupational functioning and that "[a]ll work environments would lead to stress [and] destabilize [her] condition." Tr. 606-09. Dr. Rieche submitted a second assessment questionnaire on March 23, 2015. Tr. 929-32. In that assessment, Dr. Rieche indicated Plaintiff experienced extreme difficulty in all areas of functioning, including social interaction, sustained concentration and persistence, and adaptation. *Id.* He opined Plaintiff was

"unable to handle any work setting." Tr. 932. The ALJ discounted Dr. Rieche's opinions because they were inconsistent with the medical evidence and his own treatment notes. Tr. 19, 22. The ALJ explained:

> Dr. Reiche's [sic] opinions were given little weight because they are inconsistent with his observations. Specifically, his records indicate that [Plaintiff's] mood was generally either subdued or euthymic. She never exhibited any thought disturbances such as hallucinations or delusions, and never required serious changes to her medication regimen or hospitalization. Dr. Reiche's [sic] records also show that he recommended follow-up appointments only once every few months. Moreover, [Plaintiff] reported that she was involved in the care of her son and engaged in activities such as going to the gym, playing tennis, and spending time with her family. Dr. Reiche [sic] even recommended that [Plaintiff] start volunteering in September of 2014. This evidence is inconsistent with Dr Reiche's [sic] opinion that [Plaintiff] has extreme limitations in all aspects of occupational functioning.

Tr. 22 (internal citations omitted).

Plaintiff argues the ALJ improperly weighed Dr. Rieche's opinion. *Id.* at 8. First, Plaintiff asserts the ALJ improperly failed to "explicitly consider any factors weighing in favor of Dr. Rieche's opinion," for example, the length of the doctor-patient relationship and Dr. Rieche's medical specialty, and instead focused on "isolated information" in the record tending to negate Dr. Rieche's opinion. *Id.* at 9. Plaintiff also argues certain treatment records the ALJ characterized as inconsistent with Dr. Rieche's opinion, including notes that Plaintiff was able to travel with family and volunteer, are in fact consistent with Dr. Rieche's opinion and support his assertion that "Plaintiff [would be] likely to decompensate if exposed to the stress" of working full-time. *Id.* Finally, Plaintiff argues that substantial evidence does not

support the ALJ's finding that Dr. Rieche's opinion is inconsistent with the medical evidence of record. *Id.*

The Commissioner argues substantial evidence supports the ALJ's finding that Dr. Rieche's opinion was inconsistent with his own treatment notes. *Id.* at 14. The Commissioner states, "the medical records showed that Plaintiff received only conservative treatment with medication, required no hospitalizations during the relevant period, and was not required to seek treatment from Dr. Rieche as frequently[.]" *Id.* at 15 (citations omitted). The Commissioner argues Plaintiff's noted "activities of daily living" were inconsistent with her alleged limitations, and that the state agency medical consultants who reviewed the medical evidence in 2013 "opined that Plaintiff could adapt to changes . . . and perform simple tasks in a work setting[.]" *Id.* at 15-16 (citations omitted).

Dr. Rieche's questionnaires are forms that list propositions related to a claimant's ability to function and ask for responses by checking a box next to the appropriate level of impairment. Tr. 606-09, 929-32. In his 2012 responses, Dr. Rieche checked either "marked" or "extreme" limitation in response to each proposition, and in his 2015 responses he marked "extreme" for each. *Id.* In both, he opined Plaintiff was too impaired to return to work. Tr. 609, 932. Dr. Rieche's treatment records, however, note on numerous occasions from 2011 to 2015 that Plaintiff's mood was "euthymic[;]" her affect was "bright[;]" she exhibited goal-directed thinking; her appearance was well-groomed; and/or she had no hallucinations, delusions, or homicidal or suicidal ideation. *See* Tr. 676, 678, 682,

690, 692, 726, 774, 778, 786, 788, 790, 806, 809, 846, 903, 905, 907, 909, 911, 913, 916, 918, 920, 924. Many of the same treatment notes, however, also indicate Plaintiff was "very anxious[;]" her mood was "subdued[;]" and her affect was "constricted[.]" *See* Tr. 676, 678, 682, 690, 692, 726, 778, 786, 788, 790, 806, 809, 846, 903, 905, 907, 913, 916, 918, 920.

The Court finds substantial evidence supports the ALJ's decision to afford Dr. Rieche's opinion little weight. First, form questionnaires, or so-called "checklist" opinions, like the forms submitted by Dr. Rieche, generally are disfavored and of limited evidentiary value. *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusion"); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (boxes checked by evaluating physicians did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations). Also, the ALJ was not required to give deference to Dr. Rieche's ultimate opinion on whether Plaintiff was disabled because that is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1)-(2); SSR 96-5p, 1996 WL 374183, at *2. The ALJ carefully reviewed Dr. Rieche's treatment records and considered them. Tr. 18-22. The medical evidence contains voluminous records from Dr. Rieche's years as Plaintiff's treating psychiatrist, and the ALJ found that the records were not consistent with Dr. Rieche's opinion that Plaintiff exhibited marked or extreme limitations in every area of

functioning. Tr. 22. The ALJ referenced numerous notes in the record from Dr. Rieche that report Plaintiff being in generally stable mental condition and determined those notes to be inconsistent with the psychiatrist's opinion that Plaintiff was extremely limited in every area of functioning. *See* Tr. 18-22 (citing, *e.g.*, Tr. 676, 678, 682, 690, 692, 726, 774, 778, 786, 788, 790, 806, 809, 846, 903, 905, 907, 909, 911, 913, 916, 918, 920, 924). Although many of the notes referenced by the ALJ contain both positive and negative observations of Plaintiff's conditions, "the ALJ, and not the court . . . is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers*, 738 F.3d at 1152 (citation omitted). Here, the ALJ weighed the evidence and determined that Dr. Rieche's treatment notes and the medical evidence did not support his opinion of Plaintiff's limitations, and there is a substantial amount of medical evidence, including in Dr. Rieche's notes, to support that determination. *See* Tr. 18-22 (citing, *e.g.*, Tr. 676, 678, 682, 690, 692, 726, 774, 778, 786, 788, 790, 806, 809, 846, 903, 905, 907, 909, 911, 913, 916, 918, 920, 924). Thus, substantial evidence supports the ALJ's decision to give little weight to Dr. Rieche's opinion.

### iii. *Ms. Rocco*

Ms. Rocco is a psychotherapist who was employed at Lee Memorial Behavioral Health ("LMBH") and examined Plaintiff about two to three times per month from at least September 2013 to April 2015. *See* Tr. 934-1016. The record contains Ms. Rocco's treatment notes from her regular evaluations of Plaintiff's conditions. *See id.* Ms. Rocco submitted an opinion letter on November 29, 2012. Tr. 728. In her

letter, she stated Plaintiff had been a patient with LMBH since November 30, 2010, and was being treated for bi-polar disorder, generalized anxiety disorder and obsessive-compulsive disorder. *Id.* Ms. Rocco stated Plaintiff had "made progress" but required continued treatment to maintain her "current level of functioning and to continue to manage her symptoms effectively." *Id.* She opined that "at this time, it is evident [Plaintiff] has not reached a level of stability which would enable her to cope with the stress of any type of work environment." *Id.* The ALJ discounted Ms. Rocco's opinion because it was submitted prior to the alleged onset date and was inconsistent with Plaintiff's medical records and Ms. Rocco's own notes. Tr. 22-23. The ALJ explained that Ms. Rocco's treatment notes reflect Plaintiff appearing "clean" and having a "cooperative attitude;" appropriate affect; normal speech; normal memory and ability to sustain concentration; no deficits in abstract thinking; and excellent participation level. Tr. 20 (citing Tr. 934-35). The ALJ further explained that in December 2014, Ms. Rocco noted Plaintiff was depressed and had a tearful affect but did not make any changes to Plaintiff's treatment plan. *Id.* (citing Tr. 942-43). The ALJ noted that Ms. Rocco's treatment notes reflect that Plaintiff started taking Latuda in January 2015, which helped control her emotions, and that Plaintiff was stressed due to family conflicts but "her mental status examination was generally normal[.]" *Id.* (citing Tr. 955).

Plaintiff argues the ALJ improperly weighed Ms. Rocco's opinion because her opinion was consistent with those of Dr. Torricelli and Dr. Rieche. Doc. 15 at 11. Plaintiff also argues the ALJ erred in emphasizing the date of Ms. Rocco's opinion,

since it was only about two months prior to the alleged onset date, and there is no evidence Plaintiff's condition significantly changed over those months. *Id.* The Commissioner responds the ALJ properly assigned little weight to Ms. Rocco's opinion because she submitted it prior to Plaintiff's alleged onset date; it was inconsistent with the medical evidence, including her own treatment notes; and Ms. Rocco, as a psychotherapist, is not an acceptable medical source under the regulations. *Id.* at 16-17.

The Court finds substantial evidence supports the ALJ's decision to discount Ms. Rocco's opinion. The ALJ gave specific reasons for discounting Ms. Rocco's opinions and discussed her treatment notes and observations. Tr. 20-21. As the ALJ explained, Ms. Rocco's treatment notes reflect that Plaintiff's impairments were generally manageable throughout the time of her treatment at LCBH, despite some setbacks. *See* Tr. 20-21, 933-1016. Notably, each of Ms. Rocco's numerous treatment notes in the record states that Plaintiff's functioning had progressed compared to the previous visit. Tr. 935, 937, 939, 941, 943, 945, 948, 950, 953, 956, 959, 962, 964, 967, 970, 973, 976, 979, 982, 984-1016. Ms. Rocco's treatment notes from 2013 indicate that at each appointment Plaintiff was cooperative, calm, well-groomed, had intact thought process, and was receptive to emotional support. Tr. 1005-1016. The 2013 treatment notes also indicate, however, that Plaintiff was anxious, sad, worrisome, and depressed at each visit. *Id.* Ms. Rocco's treatment notes from February 2014 to September 2014 reflect that Plaintiff was receptive to emotional support, maintaining stability, and engaged, verbal and interactive during

visits. Tr. 984-1004. Those notes, however, also indicate that Plaintiff continued to present as sad, anxious, worrisome, and depressed. *Id.* The remaining notes from 2014 and 2015 similarly indicate positive developments in Plaintiff's condition and setbacks at different times. *See* Tr. 934-983. The Court will not re-assess conflicting evidence related to Plaintiff's mental impairments, however, because "when there is credible evidence on both sides of an issue, it is . . . the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers*, 738 F.3d at 1152 (citation omitted). Further, psychotherapists are excluded from the list of acceptable medical sources in the regulations and are not entitled to substantial weight. 20 C.F.R. § 404.1513(a), (d); *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 668 (11th Cir. 2015). Therefore, substantial evidence supports the ALJ's decision to afford her opinion little weight. *See Crawford*, 363 F.3d at 1160 (substantial evidence supported ALJ's decision to discount chiropractor's opinion because he was not an acceptable medical source under the SSA regulations and his findings of disability were inconsistent with his own treatment notes and unsupported by the medical record).

b. *Whether the ALJ properly evaluated Plaintiff's credibility*

The Eleventh Circuit has long recognized that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). "If the ALJ discredits subjective testimony, [s]he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (internal citations

omitted). "The question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

The ALJ found Plaintiff's testimony regarding the intensity, persistence and limiting effects of her impairments was not "entirely credible[.]" Tr. 17. She analyzed Plaintiff's statements and compared them with the objective medical evidence in the record, concluding that the medical evidence was not consistent with Plaintiff's description of her level of functioning. Tr. 17-19. Plaintiff's testimony included statements that she was unable to do any kind of full-time work; her depression had gotten consistently worse since 2010; she was unable to help her son with his homework for more than five minutes at a time; and she had trouble focusing and reading. Tr. 40-41, 45, 49. The ALJ discussed Plaintiff's entire history of mental issues beginning with the birth of her child in December 2009, when she experienced symptoms of postpartum depression and was "Baker Acted" by the Naples Community Hospital. Tr. 17. The ALJ concluded the medical evidence from that date forward generally showed Plaintiff's mental conditions improved each year, despite Plaintiff's statements to the contrary, and that her statements were not consistent with the evidence. Tr. 17-19.

Plaintiff argues the ALJ improperly assessed her credibility when she found Plaintiff's testimony was "not fully credible because she had steadily improved,

participated in some family activities, did light household chores and cared for her children, and had fairly unremarkable mental status examinations." Doc. 15 at 19-20. Plaintiff asserts her testimony was consistent with the medical evidence, arguing, for example, her mental examinations "were routinely abnormal" and showed anxiety, depression and an abnormal affect at most visits. *Id.* at 20. Plaintiff also argues the ALJ's reliance on Plaintiff's purported "ability to perform routine and mundane activities of daily living" does not contradict her testimony that she is too disabled to perform in a full-time work setting. *Id.* Finally, Plaintiff argues the ALJ improperly "required evidence of psychosis" from Plaintiff despite her impairments not involving psychosis. *Id.* at 21. The Commissioner responds that substantial evidence supports the ALJ's credibility determination that "Plaintiff's statements concerning the intensity, persistence, and limiting effects of his [sic] symptoms were not fully credible[.]" *Id.* at 22 (citation omitted). The Commissioner asserts that despite Plaintiff's subjective complaints, the objective medical evidence shows Plaintiff steadily improved with "generally normal mental status examinations[.]" *Id.* (citation omitted). The Commissioner argues the ALJ properly considered Plaintiff's "conservative treatment history and the effectiveness of her medication" and her activities of daily living in evaluating the credibility of her testimony. *Id.* at 23.

The ALJ articulated specific reasons and cited to treatment notes in the record to discount Plaintiff's subjective statements regarding her conditions, including that the objective medical evidence was inconsistent with her testimony. Tr. 17-18

(citing, *e.g.*, Tr. 611, 772-849, 886-894, 934-1016); *see Foote*, 67 F.3d at 1562.   The ALJ relied on the treatment notes of Dr. Rieche, Dr. Torricelli, and Ms. Rocco to determine that Plaintiff's subjective complaints were inconsistent with the objective medical evidence that showed Plaintiff's conditions were generally stable.   Tr. 18-19.   The ALJ considered Plaintiff's treatment notes from 2011 to 2015 and determined that the treatment notes contradicted Plaintiff's testimony.   Tr. 19-21. It is unclear why Plaintiff argues the ALJ "improperly required evidence of psychosis, despite Plaintiff not suffering from a psychotic disorder[.]"   *See* Doc. 15 at 21.   In her opinion, the ALJ describes the origin of Plaintiff's mental impairments, which included her postpartum depression and psychosis-like symptoms.   Tr. 17-18.   She notes that upon discharge from the hospital in early 2010, and later, in May 2010, her physicians reported no symptoms of psychosis.   Tr. 18.   Nowhere does she state that the absence of psychosis-related symptoms in 2010 negates Plaintiff's credibility or has a more significant bearing on her credibility than the presence or absence of other symptoms.   Therefore, the Court finds substantial evidence supports the ALJ's credibility determination.

### c.   *Whether the ALJ properly developed a full and fair record*

The ALJ has a duty to develop a full and fair record.   *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997) (the ALJ has an affirmative duty to develop the record fully and fairly).   The Supreme Court has held that "Social Security proceedings are inquisitorial rather than adversarial.   It is the ALJ's duty to investigate the facts and develop the

arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).

In determining whether the ALJ properly developed the record, the Court is "guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Graham*, 129 F.3d at 1423 (citing *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)). If the record was sufficient for the ALJ to evaluate the claimant's impairments and functional abilities and does not show the kind of gaps in the evidence necessary to demonstrate prejudice, there is no error and the Commissioner's decision must stand. *See id.* Instead, the claimant must make "a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Brown*, 44 F.3d at 935. "[The] claimant cannot show prejudice by speculating that she would have benefitted from a more comprehensive hearing." *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016) (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)). Prejudice is shown when "the ALJ did not have all the relevant evidence before him or did not consider the evidence in reaching his decision." *Id.* (citing *Kelley*, 761 F.2d at 1540).

At the beginning of the hearing on September 10, 2015, Plaintiff's counsel told the ALJ there was one outstanding document that should be made part of the record: Dr. Rieche's most recent treatment note, from an appointment with Plaintiff "a couple weeks" before the hearing. Tr. 36. The ALJ responded that submitting the

document and making it part of the record was "not necessary if it's going to say the same thing" as Dr. Rieche's other treatment notes, including the most recent treatment note in the record from July 2015. *Id.* In her opinion, the ALJ stated "[a]dditional medical evidence from Dr. Reiche [sic] would not change my decision." Tr. 12. The ALJ thus declined to consider the additional treatment note and decided the claim based on the record as of the hearing date. *Id.*

Plaintiff argues the ALJ erred in declining to allow her to submit the additional treatment note and failed to fairly and fully develop the record under the regulations. Doc. 15 at 24. Plaintiff cites to the Hearings, Appeals, and Litigation Law Manual ("HALLEX") and asserts the procedure followed by the ALJ was in contravention of the preferred procedure set forth in the HALLEX. *Id.* Plaintiff further argues the ALJ's "speculation that the additional evidence would not change the outcome of the decision is not supported by substantial evidence." *Id.* at 25. The Commissioner argues the ALJ properly developed the record and did not err in refusing to leave the record open for the additional treatment note. *Id.* at 27. First, the Commissioner argues Plaintiff cannot show any prejudice resulting from the denial of the opportunity to submit additional evidence. *Id.* The Commissioner further argues Plaintiff could have submitted the additional note to the Appeals Council but failed to do so. *Id.* Finally, the Commissioner asserts an ALJ's failure to follow the precise HALLEX procedures is either not reviewable or requires a showing of prejudice to be reversible error. *Id.* at 26.

The Court finds the ALJ did not err in refusing to leave the record open after the hearing to receive additional evidence as Plaintiff has not made a clear showing of prejudice. *See Brown*, 44 F.3d at 935; *McCabe*, 661 F. App'x at 599. The additional evidence at issue is a single treatment note from Dr. Rieche from approximately August or September 2015. *See* Tr. 36. The record includes treatment notes from Dr. Rieche spanning multiple years, including as recent as July 2015, approximately two months prior to the hearing. *See* Tr. 605-09, 667-726, 767-69, 772-849, 886-94, 902-27, 1042-49. Further, as the Commissioner argues, Plaintiff could have submitted this additional evidence to the Appeals Council, which she apparently did not do. *See* Doc. 15 at 27; Tr. 5-8, 520-26. Plaintiff also does not state what information is contained in the treatment note or what it would show. Thus she cannot show that the lack of consideration of that unknown information prejudiced her. *See McCabe*, 661 F. App'x at 599 (claimant made no showing of prejudice "by speculating that she would have benefitted from a more comprehensive hearing").

Finally, the Court is not persuaded by Plaintiff's argument regarding the HALLEX procedures. *See* Doc. 15 at 25-26. The Eleventh Circuit has addressed HALLEX but has refrained from determining whether it is binding on the Commissioner. *See George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009). Other circuits have held that HALLEX is either not binding on the Commissioner or that a violation of HALLEX is not reversible error absent a showing of prejudice. *See Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000); *Newton v. Apfel*, 209 F.3d 448,

459-60 (5th Cir. 2000). Plaintiff alleges the ALJ violated HALLEX Sections I-2-5-13 and I-2-6-78 by refusing to leave the record open for the additional treatment note. *See* Doc. 15 at 25. Section I-2-5-13 states that a claimant "must generally inform SSA about or submit evidence . . . no later than five business days before the date of the scheduled hearing[,]" and if the claimant does so, the Commissioner "will make necessary attempts . . . to obtain the evidence." HALLEX § I-2-5-13 (S.S.A.), 2015 WL 1735348. Section I-2-6-78 states, "[w]hen the ALJ determines that additional evidence is needed . . . the ALJ will inform the claimant" that the ALJ will keep the record open for additional evidence. HALLEX § I-2-6-78 (S.S.A.), 1993 WL 751904. As Plaintiff notes, the sections were changed on May 1, 2017, and the corresponding Social Security Administration Transmittals updated the sections to "clarify" that the ALJ may decline to keep the record open if a claimant informs the ALJ of additional evidence less than five days before the hearing, and that an ALJ should apply the procedures in HALLEX Section I-2-7-20[5] when granting extensions of time to submit evidence. *See* HALLEX Transmittal No. I-2-198 (May 1, 2017), https://www.ssa.gov/OP_Home/hallex/TS/tsi-2-198.html; HALLEX Transmittal No. I-2-199 (May 1, 2017), https://www.ssa.gov/OP_Home/hallex/TS/tsi-2-199.html.

Here, Plaintiff informed the ALJ of the additional evidence on the day of the hearing, and the ALJ determined that the additional evidence was not necessary to

---

[5] Plaintiff does not argue that the ALJ violated the procedures outlined in HALLEX section I-2-7-20, and section I-2-6-78 contained no reference to section I-2-7-20 as it existed on the date of the hearing. *See* HALLEX § I-2-6-78, 1993 WL 751904; HALLEX Transmittal No. I-2-199 (May 1, 2017), https://www.ssa.gov/OP_Home/hallex/TS/tsi-2-199.html.

her determination. Tr. 36. Thus, it does not appear the ALJ violated the relevant HALLEX sections by refusing to accept the treatment note. In any event, the Court agrees with the Commissioner that Plaintiff cannot show prejudice resulted from any potential HALLEX violation because Plaintiff has not shown how the lack of the single treatment note from Dr. Rieche would impact the outcome of the hearing. *See* Doc. 15 at 27; *Sierka v. Comm'r of Soc. Sec.*, No. 6:08-cv-1073-Orl-28GJK, 2009 WL 2160523, at *12 (M.D. Fla. July 17, 2009) (citation omitted). Thus, assuming that HALLEX is binding, which is "a very big assumption[,]" the Court finds Plaintiff has not shown the ALJ violated HALLEX or that Plaintiff was prejudiced. *See George*, 338 F. App'x at 805.

ACCORDINGLY, it is

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED.**

2. The Clerk is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 24th day of September, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record